Marvin T. KARGER

v.

UNITED STATES of America.

Misc. Civ. No. 73–153–T.

United States District Court, D. Massachusetts.

Jan. 31, 1975.

David A. Wylie, Boston, Mass., for plaintiff.

George F. Kelly, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., for United States of America and Atty. Gen. of the U.S.A.

## OPINION AND ORDER

TAURO, District Judge.

Marvin Karger petitions, under the provisions of 28 U.S.C. § 2255, to vacate the sentence and judgment of conviction imposed following his guilty plea to eighteen counts of receiving and disposing of stolen securities.[1] Petitioner alleges a number of grounds for relief, including ineffective assistance of counsel, involuntary guilty plea, willful suppression by the trial judge of the existence of a plea bargain, and failure of the Government to live up to the terms of the bargain it had made. For the reasons stated below, the sentence previously imposed is vacated and the case is ordered set down for resentencing.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Karger was indicted in November 1969 on eighteen counts of receiving and disposing of stolen Treasury Bills in violation of 18 U.S.C. § 2315. He retained Attorney Joseph Oteri (Oteri) with respect to these charges. In early September 1970, after a trial date had been set, Karger indicated to Oteri that he would enter a plea of guilty in exchange for a five year sentence. Oteri conveyed this information to Edward Harrington (Harrington), the Assistant United States Attorney handling Karger's case. In response, Harrington told Oteri that the Government would recommend a five year sentence in exchange for Karger's guilty plea to all counts of the indictment.

Oteri, who had previously informed Karger that no one could "guarantee" a particular sentence, told Karger that Harrington would recommend five years in exchange for his guilty plea and that, in light of the seriousness of the offense, the Government would probably recommend a more severe sentence if the case went to trial. Oteri told Karger that Harrington's recommendation would not be binding on the sentencing judge. Oteri also told Karger that, on the basis of his experience with the sentencing judge, Harrington's recommendation would probably be followed. At no time did either Oteri or Harrington tell Karger that a five year sentence was

---

1. United States v. Karger, Criminal No. 69–282, (D.Mass. October 14, 1970).

guaranteed, or that the court was bound by the Government's recommendation.

Following this discussion with Oteri, Karger decided to enter a guilty plea and, in fact, did so at a hearing held on September 29, 1970. Despite the exhaustive and exemplary Rule 11, F.R. Cr.P., interrogation of the judge,[2] at no time did Karger, Oteri, or Harrington inform the court of the plea bargain which had been struck.[3]

Karger returned to court for sentencing on October 14, 1970. The judge asked for and received the Government's disposition recommendation. Harrington recommended concurrent terms of five years imprisonment on each count. The judge manifested considerable interest in the basis for the Government's recommendation.[4] Harrington gave two reasons for his recommendation, neither of which suggested that a plea bargain was involved. Karger was thereafter given a sentence of 12 years.[5]

Two subsequent motions to reduce the 12 year sentence were denied. A hearing was held on the first motion on October 22, 1970, and the motion was denied in February 1971. The second motion was filed in March 1971 and was denied in June 1971. At no time during the pendency of these motions was the existence of the plea bargain brought to the court's attention. Two years later, on November 30, 1973, this petition was filed.

## I

Karger's claims of ineffective assistance of counsel, involuntary guilty plea and willful suppression by the trial judge of the existence of the plea bargain are totally without merit and must be dismissed.

Karger claims that Oteri misled him into believing that the plea bargaining process would guarantee a five year sentence; that Oteri failed to call the proper witnesses in aid of his request for leniency; and that Oteri failed to advise him of the possibility of withdrawing his guilty plea when it became apparent that the judge would not go along with the Government's recommendation. For these reasons, Karger claims that his guilty plea was involuntary and that he was deprived of effective assistance of counsel.

This court finds Oteri did not mislead Karger directly or indirectly into believing that a five year sentence was guaranteed. On the contrary, this court finds that Oteri clearly and carefully informed Karger that the Government's recommendation was in no way binding on the sentencing judge. Given the context of Oteri's specific admonition that the Government's recommendation was not a guarantee, the court finds that Karger was not misled by Oteri's speculation to him that the Government's recommendation would be followed. The court finds that, at the time of his plea, Karger understood that the Government's recommendation was not binding on the court and that he ran the risk of a greater sentence in the court's discretion. In short, the court finds that Karger's plea was made volun-

2. See Transcript, September 29, 1970, at 5–36.

3. Karger maintained that he did not inform the judge as to the plea bargain on the advice of counsel. This court finds that Oteri never instructed Karger to commit perjury or to keep the information from the judge. The record fails to disclose any reason for the failure of Oteri and Harrington to inform the judge of the plea bargain.

4. The judge specifically asked, "[U]nder what circumstances do you think that the maximum sentence is to be imposed?" Transcript, October 14, 1970 at 6. In reply,

Harrington merely reiterated, "My recommendation was that a term of five years be imposed." After the inquiry as to the basis of the recommendation and the response, the trial judge then asked Harrington whether he had anything that he wished to add. The response was negative.

5. Karger was sentenced to concurrent terms of 8 years imprisonment on counts 1 through 12, 15 and 18, and concurrent terms of 4 years on counts 13, 14, 16 and 17, to be served after the eight years given for the previous counts.

tarily and with full awareness of the potential consequences.

■■ The choice of witnesses called at the disposition hearing was a matter of trial tactics and does not support Karger's claim of ineffective counsel. The transcript demonstrates a diligent effort by Oteri to obtain a light sentence for Karger. Karger, his accountant, and the investigating FBI agent were called as witnesses in an apparent effort to allay the judge's obvious concern regarding the fact that none of the proceeds from the stolen securities had been recovered. The record simply does not support Karger's contention that counsel was so ineffective as to deprive him of "reasonably competent assistance of [counsel] acting as his diligent conscientious advocate." Dunker v. Vinzant, 505 F.2d 503 (1st Cir. 1974), *quoting* United States v. DeCoster, 159 U.S. App.D.C. 326, 487 F.2d 1197, 1202 (1973).[6]

■ Given the judge's concern about the proceeds, Karger also claims that his attorney could have informed the trial judge of their fee arrangement. Since there was no evidence that the money used for attorney fees was derived from this illegal transaction, the disclosure of the fees would have been irrelevant. Accordingly, counsel's conduct in this regard cannot form the basis of a claim of ineffective assistance.

■ As a factual matter, petitioner is correct in his assertion that Oteri did not move to withdraw Karger's guilty plea. As a legal matter, that observation does not support a claim of ineffective assistance of counsel. There is no automatic right to withdraw a plea of guilty. United States v. McCoy, 477 F.2d 550 (5th Cir. 1973). Since a defendant must adduce some basis to support a motion to withdraw his plea, the decision to make such a motion is a matter of tactics. Here the tactic followed was to seek reduction of sentence. Under the circumstances, it cannot be said that the choice of such a course of action was unreasonable.

■ Petitioner's allegation that the trial judge willfully suppressed the existence of the plea bargain is equally without merit. Careful review of the transcripts of the plea and sentencing hearings reveals that at no time was the trial judge informed of the existence of the plea bargain. Indeed, it is precisely this fact that mandates that the sentence previously imposed be vacated and the case set down for resentencing.

II

The First Circuit has held a failure to inform a sentencing judge of the existence of a plea bargain to be reversible error requiring resentencing. Mawson v. United States, 463 F.2d 29, 31 (1st Cir. 1972). *See* United States v. Bednarski, 445 F.2d 364 (1st Cir. 1971). The facts of this case are legally indistinguishable from *Mawson*.

In *Mawson,* the defendant offered to plead if the Government would dismiss the indictment, substitute an information, and take into account defendant's cooperation in making a disposition recommendation. The Government agreed, but did not bind itself to any specific recommendation. The United States Attorney arrived at a disposition recommendation, but the judge did not permit the recommendation to be made. The judge sentenced Mawson without having been informed that a plea bargain, such as it was, had been entered into. Thereafter, Mawson filed a § 2255 petition to have the sentence vacated. Citing Santobello v. New York, 404 U.S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971), the court of appeals noted that had the trial

---

**6.** The First Circuit has previously used the "farce and mockery" standard for effective assistance of counsel. Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). The court in Dunker v. Vinzant did not explicitly adopt the higher standard, but did test appellant's claims against the higher standard. While the result reached in this case is the same under either standard, this court follows *Dunker* in testing the claim against the higher standard.

court known of the existence of the bargain, it would have asked for the Government's recommendation. The court of appeals concluded:

> The court was deprived of this knowledge by the government's silence at the time the defendant disavowed having been offered any inducement for his guilty plea. This was before we pointed out in *Bednarski* [United States v. Bednarski, 445 F.2d 364 (1st Cir. 1971)] the inappropriateness of such a charade. *Bednarski*, however, preceded the present proceedings, and should have controlled it.

Mawson v. United States, 463 F.2d at 31. The sentence was vacated and the case remanded for resentencing before a different judge.

■ In this case, the judge asked for the Government's recommendation as well as for its basis. He was not told of the plea bargain. The reasons that were given for the recommendation did not even initimate that a plea bargain existed. Clearly, the basis of the recommendation was the plea bargain. While the judge may not have been entitled to know the rationale behind the plea bargain, both *Mawson* and *Bednarski* hold that he was entitled to know of its existence, and that the Government had an obligation to so inform him.

■ While the judge was not bound by the Government's recommendation, it is impossible to speculate what effect, if any, knowledge of the plea bargain might have had on the sentence imposed. The judge was entitled to consider this information and the Government failed to provide him an opportunity to do so. The fact that Karger and Oteri also failed to so inform the court does not relieve the Government from its responsibility as mandated by *Mawson*.

■ Karger is entitled to have his sentence vacated even though he has failed to convince the court that his guilty plea was involuntary. Mawson v.

United States, 463 F.2d 29 (1st Cir. 1972); United States v. McCarthy, 433 F.2d 591, 593 (1st Cir. 1970). This is a logical and appropriate remedy where the Government's shortcomings relate exclusively to a sentencing procedure which follows a voluntary guilty plea. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). To vacate Karger's guilty plea, after he has already served more than four years, would be an empty gesture. Karger is entitled to the benefit of his bargain, no more and no less.

Accordingly, the sentence imposed on October 14, 1970, is vacated and the case is to be set down for resentencing.[7]

So ordered.

---

7. Implicit in this order is the court's expectation that the Government will inform the sentencing judge fully as to the terms and conditions of its bargain with Karger.